UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

EVAN DEWAN,

                            Plaintiff,

v.                                                    No. 17-CV-1315

                                                                 Jury Demanded

PETER SEIDEMAN d/b/a
LAW OFFICE OF PETER SEIDEMAN,

                            Defendant.
_____

**COMPLAINT FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT, NEW YORK GENERAL BUSINESS LAW § 349, AND NEW YORK JUDICIARY LAW § 487**

**I. Introduction**

1. This is an action for actual and statutory damages brought by Plaintiff Evan DeWan in response to violations by Defendant Peter Seideman, of: the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices; New York General Business Law § 349, which prohibits deceptive acts and practices; and New York Judiciary Law § 487, which prohibits deceit and collusion with respect to the courts or any party.

**II. JURISDICTION AND VENUE**

2. Jurisdiction of this court arises under 15 U.S.C. §1692k(d), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

1

3. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

4. This court has jurisdiction over Peter Seideman because he is a New York debt-collection attorney who regularly conducts and transacts business in this state, and the conduct complained of occurred in this District.

5. Venue is proper in this district under 28 U.S.C. §1391(b) in that the Defendant maintains his regular place of business in New York State, the Defendant transacts business here, and the conduct complained of occurred in Manhattan.

6. More particularly, Defendant unlawfully filed suit against Plaintiff in New York County on an illegal promissory note that recites sham consideration that was never paid, thereby transacting business within the State of New York and subjecting himself to the jurisdiction of the State of New York.

7. Because Defendant filed his fraudulent pleadings in New York County, venue is proper in this District.

### III. PARTIES

8. Plaintiff Evan DeWan, is a natural person residing in Palm Beach County, Florida.

9. Plaintiff never performed any duties or functions relative to his employment by Van Wagner in the State of New York.

10. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

11. Defendant Van Wagner Airship Group, LLC, is a limited liability company organized and existing under the laws of the State of Florida, with its headquarters in the State of New York.

12. The acts of Defendant Van Wagner alleged hereinafter were performed by its officers, employees or agents acting within the scope of their actual or apparent authority.

13. Defendant Peter Seideman d/b/a Law Office of Peter Seideman is a debt-collection lawyer with his office in the State of New York, County of Suffolk.

14. Defendant Seideman is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

15. Defendant Seideman does business within the State of New York and has transacted business within the State of New York as is more fully set forth hereinafter in this complaint.

16. Defendant Seideman regularly attempts to collect debts alleged to be due another.

17. The acts of Defendant Seideman alleged hereinafter were performed by its employees or agents acting within the scope of their actual or apparent authority.

18. All references to "Defendant" herein shall mean the Defendant Seideman, or their employees, officers or agents.

## IV. FACTUAL ALLEGATIONS

19. In 2014, Plaintiff DeWan learned of a job opening with Defendant Van Wagner as a blimp pilot.

20. Plaintiff DeWan applied for the job.

21. Part of the Van Wagner job involved training to be a blimp pilot.

22. When he applied for the job, DeWan had no experience as a blimp pilot, nor was he in the business of blimp-dispatching or blimp-advertising.

23. DeWan had, however, received training and become licensed as a helicopter pilot while he was a member of the armed forces.

24. On or about November 13, 2014, Van Wagner sent DeWan an offer letter, a copy of which is attached as Exhibit A.

25. DeWan travelled from Maryland to California and took the job.

26. Soon after he travelled to California and started work, Van Wagner demanded that DeWan sign a "Promissory Note" in the amount of $36,000, a copy of which is attached as Exhibit B.

27. Even though the Promissory Note is dated November 14, 2014, DeWan signed it sometime after that date.

28. DeWan was not in the business of blimp-piloting, blimp-dispatching or blimp-advertising.

29. The promissory note was a "debt" within the meaning of the FDCPA, in that it was a transaction primarily for personal, household or family purposes.

30. The "Promissory Note" was a sham in that not a penny of the $36,000 was paid to DeWan.

31. Later, after they had sued to collect on the "Promissory Note," Defendant sent an email, a copy of which is attached as <u>Exhibit C</u>, in which they essentially admitted that the entire Promissory Note was a scam, a sham, and a fraud, as follows:

> Hope things are well. Just following up on our conversation a few weeks ago regarding clients damages and the rationale behind the promissory note. After discussing with our client, Peter asked that I provide the below which explains why pilots such as Mr. DeWan, who did not have the proper license when they began working for Van Wagner are required to issue a promissory note when they begin employment and training.
>
> Essentially, it's my understanding that the note amounts to repayment for the training provided in situations where pilots, like Mr. DeWan, have not stayed long enough to "work off" the note. Take a look and let's touch base next week to discuss. Thanks, have a nice weekend.
>
> <u>Justification for 36 month note</u>
>
> • Cannot get a LTA( lighter than air ) airship license from any school…….only from commercial operator
> • All risks during training/experience build are VWAG's liability
>   o Single pilot aircraft no dual controls
> • Our IP (training programs)
> • Our Instructor pilots
> • Takes 6 months to get rating then another 6 months to be competent to be fully commercially useful
> • Previously we had trained staff ( all above) only to see them leave.
>   o Either to pursue other career (license chasing)
>   o To join another LTA operator after we had taken all risks and costs to complete their training program….

32. On or about November 14, 2014, DeWan signed a "Confidentiality, Noncompete and Assignment Agreement" with Van Wagner. A copy of the Agreement is attached as <u>Exhibit D</u>.

5

33. DeWan signed the Confidentiality, Noncompete and Assignment Agreement in Maryland.

34. DeWan signed the Promissory Note after he had travelled to California and was already working for Van Wagner.

35. In late May or early June 2015, DeWan submitted a letter of resignation from his job at Van Wagner.

36. In June 2015, DeWan moved to California and became a resident of California.

37. In 2017, DeWan moved to Florida, which is where he now resides.

38. On or about June 10, 2015, Van Wagner sent DeWan a letter demanding payment of the sum of $33,763.15 by June 24, 2015, which Van Wagner claimed was due under the Promissory Note.. A copy of the letter is attached as Exhibit E.

39. Throughout his employment at Van Wagner, DeWan was residing in Maryland, but travelling throughout the United States.

40. At no time, however, did DeWan work for Van Wagner in New York.

41. Van Wagner hired Seideman as its attorney to file suit in Manhattan, even though the sham Promissory Note and Agreement had been signed in California and DeWan was a resident of Maryland.

42. On February 22, 2016, Seideman filed a summons and complaint on behalf of Van Wagner in the Supreme Court of the State of New York, for the

County of New York. A copy of the summons and complaint is attached as <u>Exhibit F</u>.

43. Seideman falsely and fraudulently marked the case as a "Commercial Division" matter, and failed to use the required Consumer Credit Transaction summons.

44. The alleged debt arose out of a transaction in which money, services or property, which was the subject of the transaction, was primarily for personal, family and/or household purposes, to wit, employment and blimp-training. As such, said debt is a "debt" as that term is defined by 15 U.S.C. §1692a(5).

45. Any contracts related to the alleged debt were signed in California.

46. When Seideman filed suit in the Supreme Court, New York County, and made service on DeWan, he was living and residing in California.

47. Defendant Seideman was retained by Van Wagner to collect on the subject debt.

48. Seideman knew that when he filed suit on behalf of Van Wagner, DeWan was living in California, because Seideman put a California address down for DeWan on both the summons and complaint, and Seideman had the pleadings served on DeWan in California. Copies of the affidavits of service are attached as <u>Exhibit G</u>.

49. On or about February 22, 2016, Defendant Seideman filed suit on behalf of Van Wagner in the Supreme Court of the State of New York for the County of New York.

50. A copy of the Supreme Court, New York County Summons and Complaint is attached as Exhibit F.

51. The Supreme Court Summons and Verified Complaint were both signed by Defendant Seideman.

52. Defendant listed DeWan's address as an address in California.

53. Service of the summons and complaint was made in California.

54. When they filed suit, Defendant knew or should have known that DeWan had not signed any contracts with Van Wagner in New York.

55. When they filed suit, Defendant knew that DeWan resided in California.

56. Defendant Seideman actively assisted Van Wagner in this fraud and deception by filing in New York, instead of in California – where the Promissory Note was signed and where DeWan resided at the time Seideman filed suit.

57. Defendant Seideman was actively involved in the fraud and deception upon DeWan and the Court, because Van Wagner has sued on Van Wagner's promissory notes before and knew, or should have known, that no funds had been loaned to DeWan and that the Promissory Note was therefore a sham and an illegal, unlawful, and frivolous attempt to impose punitive damages that bear no relation to the damages actually suffered by Van Wagner, and to unlawfully and unreasonably restrain DeWan's trade and employment and impose an overbroad non-compete clause through the use of unlawful punitive damages.

58. In other words, through the use of a sham promissory note and unlawfully filing suit in a distant venue and falsely claiming that the suit is a commercial transaction, Defendant Seidman and Van Wagner are seeking to do an end-run around New York's prohibitions on overbroad non-compete agreements.

59. Defendant Seideman actively assisted Van Wagner in this fraud and deception in that he knew or should have known that he was aiding in these deceptive and fraudulent acts.

60. Defendant was actively involved in the fraud and deception of marking the summons and complaint as "Commercial Transactions" to get the collections matter assigned to the New York County Commercial Division and thereby avoid having to give the statutorily-required notices for a "Consumer Credit Transaction" and the additional notices required for a "Consumer Credit Transaction."

61. By failing to use the "consumer credit transaction" form, Defendant deprived DeWan of important notices and warnings and this failure rendered the summons null and void.

62. By using the wrong summons, Defendant also avoided alerting the Clerk of the Court for the Supreme Court, New York County, that he was illegally filing a Consumer Credit Transaction in the wrong state.

63. Furthermore, at no time has Seideman given the statutory notices required within five days of his initial communication with DeWan, as required under 15 U.S.C. § 1692g.

64. Nor has Seideman given the notices required under 15 U.S.C. § 1692e(11).

65. Even though all of the papers that Defendant filed with the Supreme Court of the State of New York show conclusively that DeWan resided in California, Defendant nevertheless filed papers in New York, thereby intentionally deceiving the New York State Supreme Court and DeWan.

66. DeWan has been forced to hire an attorney to defend the New York action and he has already had to pay fees to defend an illegal action unlawfully commenced in a distant forum to collect on a sham and fraudulent promissory note.

67. Moreover, Defendant knew, or should have known, that the entire "Promissory Note" upon which they sued was a sham, a scam, and a fraud in aid of unlawful restraint of trade and employment, in that not a penny of the $36,000 recited in the Promissory Note was paid to DeWan or anyone else signing up for employment and training by Van Wagner, and therefore, that the entire summons and complaint was frivolous, fraudulent, and illegal.

68. In other words, as Van Wagner knew, and Seideman knew or should have known, the entire scam promissory note amounted to little more than involuntary servitude and an unlawful, unlimited non-compete agreement for a period of three years.

69. That the attempt to collect up to $36,000, plus fees and costs constitutes unlawful punitive damages that bear no relationship, reasonable or otherwise, to any damages actually suffered by Van Wagner.

70. This is especially true because DeWan was already a helicopter pilot during the training period and was more advanced than many of the other beginning employees.

71. In other words, because of DeWan's experience as a helicopter pilot, any alleged costs of training him were substantially lower than the costs of training pilots without any experience flying.

72. That the attempt to collect up to $36,000 in sham consideration for leaving the employ of Van Wagner early constitutes an unlawful student loan and/or an unlawful and unreasonable restraint on trade and/or an unlawful and/or unreasonable non-competition clause and/or involuntary servitude in violation of the 13th Amendment to the U.S. Constitution.

73. As a result of Defendant's acts, Plaintiff DeWan has become nervous, upset, anxious, and suffered from emotional distress and embarrassment over this sham lawsuit for money that was never loaned in a forum as distant from California as one can get.

74. In addition, DeWan has suffered actual monetary losses from having to hire an attorney to defend the fraudulent and frivolous action filed in an incorrect venue using improper forms.

75. Moreover, Seideman has been unlawfully continuing the case in the Supreme Court, New York County, despite knowing that the $36,000 in consideration recited in the Promissory Note was nothing more than a sham that was never paid.

76. Thus, the scam is an ongoing harm for which Plaintiff DeWan is continuing to accrue damages by being forced to defend this action in a distant forum.

77. Originally, the scam required him to fly from California to New York, but now it will require that he traverse the country in the other direction, from Florida to New York, to continue defending the case pending in Supreme Court, New York County.

78. Defendant Van Wagner's actions as described above are unconscionable and render the Promissory Note void and unenforceable.

## V. CAUSES OF ACTION

### COUNT I

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

79. Plaintiff restates, realleges, and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

80. The conduct of Defendant as described in this complaint violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.*, as follows:

   A. Defendant violated 15 U.S.C. §1692i by filing suit in New York, when the only proper venue was in Maryland or California.

   B. Defendant violated 15 U.S.C. §1692e, e(2), e(5), e(10), and f, by filing a lawsuit for a sham loan in order to recovery punitive damages that bear no relationship to any damages actually suffered and to unlawfully restrain and prevent DeWan from pursuing another career of any kind for three years;

   C. Defendant violated 15 U.S.C. §1692e, e(2), e(5), e(10), e(13), and f, by failing to use the "CONSUMER CREDIT TRANSACTION" forms

       mandated by the New York Courts and, instead, falsely representing and implying that the non-consumer-credit-transaction forms were legal process and that this case was a commercial transaction in order to obtain a faster judgment and to hoodwink the Court and Plaintiff into not noticing that the case was being filed in the wrong state.

   D. By filing and by serving the state lawsuit in what Defendant knew or should have known was the wrong venue, by submitting papers false and deceptive papers under penalties of perjury in what Defendant knew or should have known was an improper venue, and by filing and seeking to enforce hundreds if not thousands of debt-collection cases and default judgments without – as demonstrated here – performing any meaningful review, Defendant has violated 15 U.S.C. §§1692e, e(3), and e(10), by falsely representing that an attorney had meaningfully reviewed DeWan's file and complaint and information subpoena and restraining notice. As most of the documents attached as exhibits hereto come from Defendant's office and indicate – through signature or address block – that they come from attorney, these documents are false and deceptive in that no attorney meaningfully reviewed the file prior to the document being filed and/or served. Defendant's actions in this regard violate 15 U.S.C. §§1692e, e(3), and e(10). Defendant's actions in repeatedly failing to review the file resulted in the state-court action being filed in an improper venue and in DeWan having to incur the expense of hiring an attorney to defend the New York action.

   E. Defendant violated 15 U.S.C. §1692c(b), by using false, deceptive, unfair, and unconscionable means to attempt to collect a debt, using improper forms.

81. As a result of the Defendant's FDCPA violations as alleged herein, DeWan has been forced to hire and pay an attorney to defend the New York action.

82. That as a result of Defendant's acts Plaintiff DeWan became nervous, upset, anxious, and suffered from emotional distress and embarrassment.

83. In addition, DeWan has suffered actual monetary losses from having to hire an attorney to defend an action filed in an incorrect venue using improper forms.

84.     Moreover, DeWan is continuing to suffer ongoing harm from having the Supreme Court, New York County case, which never should have been brought and which was filed in an unlawful distant forum, hanging over his head.

**WHEREFORE**, Plaintiff Evan DeWan respectfully request that judgment be entered against the Defendant for:

(a) Actual damages;

(b) Statutory damages for pursuant to 15 U.S.C. § 1692k.

(c) Costs, disbursements and reasonable attorney's fees under 15 U.S.C. § 1692k.

(d) For such other and further relief as may be just and proper.

## COUNT II

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349

85.     Plaintiffs restate, reallege, and incorporate herein by reference all foregoing paragraphs as if set forth fully in this Count.

86.     Under New York General Business Law ("GBL") § 349, deceptive acts or practices in the conduct of any business conducted in the State of New York are unlawful.

87.     Defendant's preparation and use of preprinted "Promissory Note" forms that recite sham consideration of $36,000 in order to restrain DeWan and other employees' ability to leave its employ constitutes and unlawful and unconscionable restraint of trade and abusive and deceptive consumer-oriented practice.

88. Defendant's use of preprinted "Promissory Note" forms with unlawful forum-selection clauses that force DeWan and anyone from outside of New York County to defend a sham action in New York County constitutes a false and deceptive consumer-oriented practice.

89. That Defendant has used these false and deceptive tactics against other employees in the past, filing cases as commercial matters and seeking to collect sham consideration in the distant forum of New York County in an apparent attempt to obtain default judgments against former employees who had the audacity to leave in less than three years.

90. Defendant's acts and practices as recited herein affect the consuming public at large, in that the pre-printed Promissory Note is apparently being used by Van Wagner nationwide and is being enforced by Seideman here in New York Supreme Court, where at least one prior case has been filed by Seideman in the Commercial Division against a former employee of Van Wagner. *See Van Wagner Airship Group, LLC v. Cox*, Supreme Court, New York County, Index No. 654487/2013.

91. In *Cox*, Seideman sued Cox in Manhattan on behalf of Van Wagner, even though Cox lived in Kansas, and even thought the promissory note sued upon designated Florida as the only venue in which suit could be filed. *See* Summons and Complaint, attached as <u>Exhibit H</u>, Affidavit of Service, attached as <u>Exhibit I</u>, and the promissory note in Cox, attached as <u>Exhibit J</u>.

92. In other words, Seideman does not care (a) where the consumer lived when the promissory note was signed, (b) where the consumer lives when he files suit, or (c) even what venue the promissory note with the consumer designates as the place of trial.

93. No matter what, Seideman is going to file suit in Manhattan.

94. Apparently, the only thing that prevented Seideman from entering default judgment against Cox was Seideman's failure to move for judgment within one year of the default. *See* Decision and Order denying motion for default judgment, attached as Exhibit K.

95. Thus, Seideman's attempts to enforce the sham promissory notes promulgated by Van Wagner not only potentially affect similarly-situated consumers, they *actually* affect similarly-situated consumers in a material way.

96. Defendant's filing of a false and deceptive complaint to obtain venue in New York County constitutes false and deceptive practices within the meaning of GBL § 349.

97. As a result of the Defendant's GBL § 349 violations as alleged herein, DeWan has been forced to hire and pay an attorney to defend the New York action.

98. That as a result of Defendant's acts Plaintiff DeWan became nervous, upset, anxious, and suffered from emotional distress and embarrassment.

99. In addition, DeWan has suffered actual monetary losses from having to hire an attorney to defend an action brought in an incorrect venue using improper forms.

100. By and through its acts, omissions, concealments, and misrepresentations, Defendant violated GBL §§ 349 with materially misleading and consumer-oriented deceptive acts and practices, with a broad impact on consumers at large, and did so knowingly or willfully.

WHEREFORE, Plaintiff asks that this Court enter judgment in his favor against Defendant, awarding damages as follows:

(A) Civil penalties as provided under New York General Business Law § 349;

(B) Actual damages provided under New York General Business Law § 349;

(C) Punitive damages as provided under New York General Business Law § 349;

(D) Attorneys' fees, litigation expenses and costs incurred in bringing this action; and

(E) Any other relief this Court deems appropriate and just.

## COUNT III

### VIOLATIONS OF NEW YORK JUDICIARY LAW § 487

101. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

102. Defendant was guilty of deceit in Supreme Court, New York County in misrepresenting that this case was not a "consumer credit transaction," in filing suit in an improper venue, and in filing suit to recover for sham consideration on a sham "Promissory Note."

103. Defendant perpetrated this deceit with intent to deceive the state court and Plaintiff.

104. Specifically, as reviewed above, Defendant knowingly and falsely filed this case as a non-consumer-credit transaction matter, knowingly and falsely filed the case in an improper venue, and knowingly and falsely filed documents to obtain recovery on a sham "Promissory Note" in which the recited consideration had never been paid.

105. These false representations were made under penalties of perjury by Defendant.

106. As a result of these false representations, the Plaintiff has suffered damages as further described above in this Complaint.

107. Plaintiff and the class are entitled to treble his damages as a result of Defendant's violations of Judiciary Law § 487, reasonable attorney's fees, and costs.

WHEREFORE, Plaintiff asks that this Court enter judgment in his favor against Defendant, awarding damages as follows:

(A) Statutory damages and civil penalties as provided under § 1692k of the FDCPA and under the New York General Business Law;

(B) Actual damages provided under the FDCPA, 15 U.S.C. 1692k and the New York General Business Law;

(C) Punitive damages as provided under the New York General Business Law;

(D) Attorneys' fees, litigation expenses and costs incurred in bringing this action;

(E) Treble damages under the New York Judiciary Law; and

(F) Any other relief this Court deems appropriate and just.

## COUNT IV

## ABUSE OF PROCESS

108. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

109. Seideman engaged in abuse of process by intentionally filing lawsuits in an improper and distant venue for the purpose of obtaining default judgments and seizing assets that defendant is not entitled to obtain by lawful means, as well as for the equally nefarious purpose of trying to gain an unfair and unlawful advantage by forcing consumers, like DeWan, to hire local counsel and travel far to unlawful distant forums to defend themselves.

110. Seideman has taken these actions with respect to DeWan and to other consumers who worked for Van Wagner – and possibly other companies – without excuse or justification.

111. Seideman has perverted legal process by taking the actions described above of unlawfully filing these unfair, deceptive, unconscionable and unlawful suits in distant forums for the purpose of obtaining the collateral objective of unlawfully obtaining default judgments, based on unenforceable promissory notes, and gaining and unfair and unlawful advantage by forcing consumers, like DeWan, to hire local counsel and travel far to unlawful distant forums to defend themselves.

112. Plaintiff has been and is being damaged by Defendant's practices.

113.    Defendant engaged in the practice complained of for the purpose of injuring and taking advantage of consumers.

## JURY DEMAND

Please take notice that Plaintiffs demand trial by jury in this action.

Dated:     New York, New York
           February 21, 2017

                                                    RESPECTFULLY SUBMITTED,

                                                    /s/ Brian L. Bromberg
                                                    Brian L. Bromberg
                                                    One of Plaintiff's Attorneys


**Attorneys for Plaintiff**

Brian L. Bromberg
Jonathan R. Miller
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, NY 10004
Tel: (212) 248-7906